## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| | * | |
| v. | * | Criminal No. **PJM 01-0097** |
| | * | |
| D'ANGELO DUNLAP, | * | |
| | * | |
| Defendant. | * | |

## <u>MEMORANDUM OPINION</u>

D'Angelo Dunlap has filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 31, supplemented by counsel, ECF No. 34, the Government has responded in Opposition, ECF No. 36, and Dunlap has replied, ECF No. 38. For the reasons set forth below, the Court **DENIES** the Motion.

I.

On February 26, 2001, Dunlap was indicted on two counts of bank robbery, and on January 3, 2002, he pled guilty to both counts. On March 12, 2002, the Court, after considering the guidelines and the sentencing factors under 18 U.S.C. § 3553(a), sentenced him to 188 months imprisonment on each count, to be served concurrently, followed by a total of three years of supervised release. ECF No. 10. Even though Dunlap only pled to the two bank robberies listed in his indictment, the Court also took into consideration as relevant conduct two additional bank robberies he committed in the District of Columbia (a two-count complaint in Washington, D.C was dismissed as part of the Plea Agreement). February 11, 2002, Presentence Report ("PSR") at ¶ 4. On December 31, 2014, Dunlap was released from custody after serving his sentence in the underlying case and started his term of supervised release. ECF No. 34.

On November 26, 2019, however, Dunlap again appeared before this Court for a hearing on alleged violations of the terms of his supervised release. ECF No. 28. At the hearing, he knowingly and voluntarily admitted to three violations: Robbery and Theft on October 23, 2015, as charged by the District Court for Charles County[1]; and two instances of Bank Robbery on October 22, 2015 and October 26, 2015, as charged in *United States v. D'Angelo Dunlap*, No. 17-cr-207 (KBJ) in the United States District Court for the District of Columbia.[2] ECF No. 29. As a result, this Court revoked Dunlap's supervised release and sentenced him to 24 months incarceration, to run consecutively to any other sentence he was then serving. He is currently serving his sentence from the District of Columbia case, with an estimated release date of June 11, 2023.

On June 1, 2020, Dunlap, *pro se*, filed a Motion for Compassionate Release, ECF No. 31, which his counsel supplemented on July 16, 2020, ECF No. 34. The Government responded on July 30, 2020, ECF No. 36, and Dunlap replied on August 5, 2020, ECF No. 38. The Motion is now ripe for decision.

II.

Until recently, courts lacked authority to entertain compassionate release requests of defendants except upon motion of the Director of the Bureau of Prisons. *See, e.g.*, *United States v. Fletcher*, 2014 WL 12824234 (D. Md. Apr. 14, 2014). However, the 2018 First Step Act, among other things, amended § 3582(c) so as to allow courts to consider compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal

---

[1] Dunlap was sentenced to 7 years imprisonment. ECF No. 17.
[2] Dunlap was sentenced to 57 months incarceration with credit for time served since January 10, 2018, 36 Months of Supervised Release, a Special Assessment of $200.00 and Restitution of $3,080.00. The sentence of 57 months incarceration was to run concurrently to the 7 year sentence imposed in his Charles County case, though the Government submits that he has been paroled from that sentence and is solely serving the 57 month sentence in his District of Columbia case. The Court understands that he has also filed a Motion for Compassionate Release in his District of Columbia case.

– 2 –

a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

If a defendant has exhausted his administrative remedies, a court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that… (i) extraordinary and compelling reasons warrant such a reduction." *Id.* The defendant generally bears the burden of establishing that a sentence reduction is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Riley*, 2020 WL 3034843, at *5 (D. Md. June 4, 2020); *United States v. Edwards*, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020); *United States v. Stowe*, 2019 WL 4673725 at *2 (S.D. Tex. Sept. 25, 2019).

In 28 U.S.C. § 994(t), Congress delegated to the U.S. Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." In U.S.S.G. § 1B1.13, the Sentencing Commission provided examples of "extraordinary and compelling reasons" and mandated that the defendant must also not present "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and that the reduction must be otherwise consistent with U.S.S.G. § 1B1.13.

III.

A court evaluates the merits of the motion "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

At the time of the filing of the Motion, Dunlap was held at Chesapeake Detention Center, which is not a Bureau of Prisons ("BOP") facility. Accordingly, both Dunlap and the Government agreed that the Court had the authority to rule on the motion. However, in his reply, Dunlap notified the Court that he had been designated to Federal Correctional Institution Schuylkill ("FCI Schuylkill"), which is a BOP facility. According to the BOP website, he is currently incarcerated at FCI Schuylkill. Federal Bureau of Prisons, *Find an Inmate* (last visited August 22, 2020), https://www.bop.gov/inmateloc/.

This Court addressed similar circumstances in *United States v. Barringer*, where it found that a defendant held at a facility without a BOP warden had exhausted his administrative remedies, because he "has done all he can to exhaust his administrative remedies." 2020 WL 2557035, at *3 (D. Md. May 19, 2020). The same logic applies here since the statute says "upon motion," i.e. at the time of filing. Even though Dunlap has since been transferred to FCI Schuylkill, at the time he filed his motion, he had no BOP warden to whom he could submit a request, and had exhausted his administrative remedies.

The Court considers, then, whether Dunlap has demonstrated "extraordinary and compelling reasons" for release. Dunlap argues that the Court has the authority to define "extraordinary and compelling reasons" for release under U.S.S.G. § 1B1.13 app. n.1(D), which states that the Director of the BOP can determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." He submits that many courts have held that judges, in addition to the Director of the BOP, can make this determination.

U.S.S.G. § 1B1.13 has not been updated since the passage of the First Step Act. *See United States v. Gagne*, 2020 WL 1640152, at *2 (D. Conn. Apr. 2, 2020). For example, it states that a

court may reduce a term of imprisonment only "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," which is clearly inconsistent with the current language of 18 U.S.C. § 3582(c)(1)(A), which allows the defendant to file a motion as well. Further, "cabining the application of § 3582 to the scenarios set forth in the commentary accompanying U.S.S.G. § 1B1.13 is contrary to the [First Step Act], which Congress enacted to remove the BOP as the gatekeeper of compassionate release." *Wise v. United States*, 2020 WL 2614816, at *5 (D. Md. May 22, 2020). As such, courts across the country, including this Court, have held that a district court has independent discretion to determine the "extraordinary and compelling reasons" that warrant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). *See, e.g.*, *United States v. Decator*, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020) (stating that while "Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence"); *see also United States v. Mel*, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Morrison*, 2020 WL 3447757, at *3 (D. Md. June 24, 2020); *United States v. Gutman*, 2020 WL 2467435, at *2 (D. Md. May 13, 2020); *United States v. Redd*, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020).

The Court held in *United States v. Barringer*, 2020 WL 2557035 (D. Md. May 19, 2020) and *United States v. McRae*, 2020 WL 3791983 (D. Md. July 7, 2020) that, in light of the passage of the First Step Act, U.S.S.G. § 1B1.13 and BOP criteria are "helpful guidance," but that a court has independent discretion to determine whether there are "extraordinary and compelling reasons" for release. The Court is also in accord with other judges of this district and many courts nationwide that, in current circumstances, given the difficulties of social distancing while incarcerated and the spread of COVID-19 in BOP facilities during the current COVID-19 pandemic, a defendant may

present "extraordinary and compelling reasons" for release if he has a serious medical condition or conditions that place him at high risk for complications if he contracts COVID-19. *See, e.g.*, *Morrison*, 2020 WL 3447757, at *4; *United States v. Riley*, 2020 WL 3034843, at *6 (D. Md. June 4, 2020); *Wise*, 2020 WL 2614816 at *7.

Dunlap, who is 55, argues that he has demonstrated "extraordinary and compelling" reasons for release based on his health problems. He says he has high blood pressure, severe and diverticulitis of the colon, an inflamed liver, and calcium buildup in his heart. He adds that he has degenerative disc disease and endured a spinal fusion in 2014 that resulted in a metal rod being placed between his second and third cervical vertebrae.

The Government responds that current Department of Justice policy is that if an inmate "presents one of the factors identified by the Center for Disease Control (CDC) that puts him at increased risk of severe illness from COVID-19," he has demonstrated "extraordinary and compelling reasons" for relief as defined in U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I). But the Government then adds that that none of Dunlap's medical conditions, while serious, are identified by the Center for Disease Control as factors that put him at increased risk of severe illness from COVID-19. In fact, the Government submits that, while Dunlap argues that he suffers from high blood pressure, it has reviewed the 494 pages of Dunlap's medical records and, out of at least 69 times he has had his blood pressure taken between March 15, 2016 and June 10, 2020, only on four occasions did a medical professional make any note regarding his blood pressure. Further, the Government argues that there is no actual diagnoses of hypertension, nor is there any indication of a treatment plan in his medical records.

Dunlap, in his reply, emphasizes that he is 55 years old and, for the first time, claims he is obese. As such, according to him, he presents a factor identified by the CDC that puts him at

increased risk of severe illness from COVID-19, and has demonstrated "extraordinary and compelling reasons" for release under the Department of Justice's own policy.

Dunlap's arguments are unpersuasive. First, he cites no source for the proposition that being 55 years old is a factor identified by the CDC that puts him at increased risk of severe illness from COVID-19, a pre-requisite to demonstrating "extraordinary and compelling" reasons for release under the Department of Justice's policy. And in its independent assessment, while the Court recognizes that risk for severe illness from COVID-19 increases as one ages, being 55 is by itself not an "extraordinary and compelling reason" for release.

Second, Dunlap submits that he is obese, defined as having a Body Mass Index ("BMI") over 30, based on one citation to his medical records, ECF No. 34-1 at 16. This document, a record from his visit to the Central Detention Facility on June 16, 2020, does not explicitly state that Dunlap is obese or suffers from obesity—rather, it lists his BMI as 30.6. *Id.* However, it also lists his weight as 180 lbs. and his height as 65 inches. *Id.* Other medical records list his height as 69 inches, as does the PSR prepared for his sentencing in the District of Columbia case. ECF No. 38-1 at 22. If his height is in fact 69 inches, his BMI would be under 30. While Dunlap may in his own opinion feel he is obese, he has not carried his burden to show that he is, objectively, in fact, obese.[3]

Dunlap's other claimed medical conditions, while serious, are not identified by the CDC as factors that put him at increased risk of severe illness from COVID-19. At the hearing on his violations of supervised release before the Court, Dunlap cited these conditions and the Court took them into account when it sentenced him to 24 months in custody. Nothing has changed[4]. Further,

---

[3] In his District of Columbia case, Dunlap concedes that he is not obese. *United States v. D'Angelo Dunlap*, No. 17-cr-207 (KBJ), ECF No. 41 (conceding the "government appears to be correct" that Dunlap is not clinically obese).

[4] Dunlap submits that he has been unable to receive a MRI or CT scan to investigate his claims of heart problems, and has not been referred for outside medical care to assess whether further surgery on his colon is necessary due to the

FCI Schuylkill at present only has had 1 inmate test positive for COVID-19. *See* Federal Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last visited August 25, 2020). Accordingly, the Court finds that Dunlap has not demonstrated "extraordinary and compelling reasons" for compassionate release either under the Department of Justice's policy or under its own evaluation.

IV.

Even if Dunlap had demonstrated "extraordinary and compelling reasons" for relief, the Court finds that the 18 U.S.C. § 3553(a) factors weigh against relief.

Section 3553(a) states that the Court should impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).

The Court also considers such other factors as "the nature and circumstances of the offense and the history and characteristics of the defendant;" and "the kinds of sentences available." 18

---

pandemic. These allegations, of course, are concerning to the Court. But they are not in and of themselves "extraordinary and compelling" reasons for release. Even if they were, the 18 U.S.C. § 3553(a) factors clearly weigh against granting Dunlap compassionate release.

U.S.C. § 3553(a). Further, the Court may consider an eligible defendant's post-sentencing conduct in determining whether relief is appropriate. *See Pepper v. United States*, 562 U.S. 476 (2011).

The Government argues that the 18 U.S.C. § 3553(a) factors weigh heavily against reducing Dunlap's sentence. The Government points out that less than a year after he was released from serving a 188 month sentence for bank robberies, Dunlap went back to using heroin and committed three more bank robberies. Because of these robberies, he has an elevated criminal history category of VI. The Government points out that a 188 month sentence was clearly insufficient to deter him from reoffending, so that reducing his sentence from 24 months to zero months would result in an undeserved windfall.

The Government submits that Dunlap is a danger to the community because in the past 20 years, he has robbed 9 (nine) banks. Even though no weapons were used in these robberies, the crime is inherently dangerous. Dunlap's history of being released from prison, relapsing into drug use, failing to address his drug problem and failing to seek help even though he has resources to do so, culminating in by a series of additional bank robberies, says the Government, make any reduction of his sentence totally inappropriate.

Dunlap, of course, disagrees with the Government's assessment. He argues that during the time he was released from incarceration for his 188 month sentence and before he was arrested again in 2015, he completed a job readiness program, secured fill-time employment, and soon after was promoted. He says he was engaged in the community, served as a motivational speaker, and volunteered for community service. He submits that it was the stress of his job and the immense pressure not to disappoint others that led him to use illicit substances, which culminated in him committing three robberies in the span of 32 days while on a heroin binge.

Dunlap also argues that he is not a danger to the community, pointing out that, while in custody, he has focused his efforts on self-improvement and developing healthy strategies to successfully reenter the community. He says that continued incarceration is not needed to protect the community because with the exception of 10 months, he has been incarcerated for nearly 20 years.

The Court firmly rejects all of Dunlap's arguments.

Preliminarily, the Court notes that he has not served one day of the 24 months of consecutive incarceration imposed by this Court. Granting him compassionate release would award him with a "get-out-of-jail-free" card, *United States v. Williams*, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) and make a statement that there are no consequences to violating the terms of supervised release.

The Court finds that Dunlap is a danger to the community. As the Government points out, he has a history of being released from prison, then immediately sinking back into drugs and committing robberies. In this case, in 2015, he committed three robberies within a year of finishing a 188 month term of incarceration. In 2000 he was released after serving 39 months in prison and committed four robberies less than a year later. Dunlap argues that, because he has been incarcerated for nearly 20 years with the exception of ten months, continued incarceration is not necessary to protect the community. But the fact that he has been incarcerated for that long means little because whenever he has been released, Dunlap almost immediately reverts to the same crimes that led to his incarceration.

For these reasons, the Court finds that re-affirming the full 24 month sentence of incarceration reflects the seriousness of Dunlap's offense, promotes respect for the law, provides just punishment for the offense, and affords adequate deterrence to criminal conduct. During the

hearing on his violations of supervised release, the Court sentenced Dunlap to the statutory maximum under 18 U.S.C. § 3583(e)(3) for these very reasons. This rationale holds, wholly apart from the COVID-19 pandemic.

All 18 U.S.C. § 3553(a) factors weigh in favor of denial of his motion.

V.

Accordingly, Dunlap's Motion for Compassionate Release, ECF No. 31, is **DENIED**.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

August 28, 2020